Filed 5/13/24  P. v Whelan CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C097360 |
| v. | (Super. Ct. No. CR20195351) |
| KEITH JAMES WHELAN, | |
| Defendant and Appellant. | |

A jury convicted defendant Keith James Whelan of aggravated sexual assault of a child by means of duress (Pen. Code, § 269, subd. (a)(1)[1] -- counts 1, 4, 7, 10), sexual penetration of a child by means of duress (§ 289, subd. (a)(1) -- counts 2, 5, 8, 11), committing lewd acts on a child (§ 288, subds. (a), (c)(1) -- counts 3, 6, 9, 12, 14, 16, 18, 20, 22, 24, 26, 28, 30), and rape by means of duress (§ 261, subd. (a)(2) -- counts 13, 15, 17, 19, 21, 23, 25, 27, 29).  Following a bifurcated trial, the jury found that defendant was previously convicted of a serious felony offense, and that the offenses in this case were

---

[1] Undesignated statutory references are to the Penal Code.

1

committed against the same victim on separate occasions. The jury also found eight aggravating circumstances to be true. The trial court sentenced defendant to state prison for an aggregate determinate term of 54 years 4 months, consecutive to an aggregate indeterminate term of 60 years to life.

Defendant now contends (1) the prosecutor committed misconduct by misstating the burden of proof during closing argument, and if the contention is forfeited his counsel was ineffective; (2) the trial court should not have instructed the jury that an uncharged sexual offense could be considered for propensity if the prosecution proved the offense by a preponderance of evidence; (3) the trial court erred in instructing the jury inconsistently on the crimes that were alleged to have been accomplished by duress; and (4) cumulative prejudice requires reversal.

We conclude (1) the prosecutorial misconduct claim is forfeited and defendant has not established that his counsel was deficient; (2) the trial court did not err in instructing the jury on the uncharged misconduct; (3) although the trial court instructed the jury inconsistently on the crimes that were alleged to have been accomplished by duress, the assumed instructional errors were harmless beyond a reasonable doubt; and (4) there is no cumulative prejudice.

We will affirm the judgment.

BACKGROUND

Defendant committed the sexual offenses in this case against his stepdaughter, E. He entered the child's life just after her ninth birthday, when he rekindled a romantic relationship with E.'s mother that they previously had in high school. A few months later, they moved into an apartment in Vacaville. E.'s mother gave birth to twin daughters just before E. turned 10 years old. When E. was 12 years old, her mother was diagnosed with cancer. She passed away about seven months later. E. was 13 years old.

E. became depressed after her mother died. Defendant coped with the mother's passing by abusing alcohol and drugs, particularly cocaine. About a month after the

2

mother died, one of defendant's friends moved into the apartment. As E. described it, defendant and his friend would party together. Defendant "stopped acting like a dad" around that time. On one occasion, defendant offered cocaine to E., saying it would make her more energetic. He showed her how to snort the substance, which she did. Defendant also began making sexual comments about E.'s body and told her that having sex might make her stronger. Around the same time, on two occasions, he invited her into his bedroom. Once they were on the bed, he would try to wrap his arms around her waist and cuddle her from behind. That made E. uncomfortable.

One night, while the twins were asleep, defendant and E. were on the couch in the Vacaville apartment watching a movie. Defendant told E. she "wouldn't feel so empty" if she had sex. He placed a vibrator against her vagina over her clothing and asked if she liked it. E. was confused and did not respond. Defendant removed her pants, or had her do so, and placed the vibrator directly against her vagina. E. told defendant that she was uncomfortable and "didn't want to do this." Defendant removed his pants and inserted his penis into her vagina. E. testified she kept saying, "This is wrong, this is wrong, this should not be happening. Why is it happening?" She said defendant told her everything was okay, but she knew it was not okay. E. testified: "I didn't really have a choice. I already lost my mom. I told him no. I was afraid he would leave too." She added: "I was always a small kid, and he was larger in size, and he was strong."

E. specifically described the details of three incidents at the Vacaville apartment, and said defendant had sex with her nearly every day. During a second assault, which was not charged as an offense, E. told defendant that she did not want to be doing anything sexual with him.

Defendant, E., and the twins moved out of the Vacaville apartment just after E. turned 14. They moved to a property near Davis owned by a family friend named Dana. At first, defendant and the children stayed in a trailer on the property. Eventually, E. and the twins moved into Dana's house and defendant remained in the trailer.

3

Defendant continued abusing drugs while at Dana's property, including cocaine and methamphetamine. He also continued his sexual abuse of E. The vast majority of the sexual assaults occurred in the trailer, although E. specifically described one assault that occurred in a garage. The assaults continued on nearly a daily basis, sometimes twice a day. About half the time E. would orally copulate defendant rather than have intercourse with him "so he would be satisfied and I could leave again." E. described the use of sex toys during some of the sexual assaults.

E. testified that she did not want to engage in any of the sexual activity. She went along with it in the hope that defendant would stop being violent and would stop yelling, and so she would not have to worry about her sisters. At some point E. started to pretend to like it. She explained that she was tired of the emotional and physical abuse and gave in to whatever he wanted. E. testified that defendant yelled at her, particularly when she distanced herself from him. She also described an incident in which defendant chased her out of the trailer with a machete.

Dana confirmed that defendant was aggressive and controlling, especially with E. Dana suspected sexual abuse because E. would stay in defendant's trailer late into the night on weekends, and she found "sexy, G-string kind of underwear" in the laundry. E. denied that sexual abuse was occurring. E. later explained that she was afraid of defendant, adding: "He threatened to take my sisters away or kill me if I told on him because he didn't want to go back to prison." E. confirmed that defendant bought her the underwear Dana found in the laundry.

E.'s boyfriend at the time testified that she was terrified of defendant. After an argument between the boyfriend and defendant, defendant told E. he was going to go to the boyfriend's house and kill him. E. broke up with the boyfriend to protect him and appease defendant.

Two days before E.'s 16th birthday, she had a pizza party. The next day, defendant called E. from the trailer and told her to bring him the leftover pizza. E. did not bring

4

defendant all the pizza because Dana had packaged some of it to feed the twins.  When defendant insisted that she bring it all to him, E. did so by opening the trailer door and throwing it on the floor.  Defendant ran after her, grabbed her by the hair, and pulled her to the ground.  He dragged her back to the trailer while she screamed.  E. punched defendant in the groin and defendant slapped her across the side of her head before letting her go and walking back to the trailer.  The next day, E. decided to move in with her grandparents.

After E. moved in with her grandparents, she resumed her relationship with her boyfriend and told him about the abuse, but she asked him not to tell anyone.  Sometime later, she told two other friends, but asked them not to tell anyone.  A few months after moving in with her grandparents, E. told her grandmother about the abuse.  The next day, as recommended by her grandmother, E. told a teacher at her school, who notified authorities.

During a forensic interview with a detective from the Yolo County Sheriff's Department, E. said defendant first inserted his penis into her vagina two weeks after her mother died.  E. estimated defendant assaulted her more than 80 times over more than two years.

Defendant testified in his own defense and denied the allegations of abuse. He corroborated E.'s testimony regarding his aggressive and violent outbursts, including the machete incident, the incident involving her boyfriend, and the pizza incident.  But defendant claimed E. fabricated the sexual abuse because of the way he treated her boyfriend.

DISCUSSION

I

Defendant contends the prosecutor committed misconduct by misstating the burden of proof during closing argument.

5

At the end of his closing argument, the prosecutor argued: "And then lastly, the burden of proof in this case is beyond a reasonable doubt. We talked about that when we picked this jury. [The judge] has read that instruction to you. I would expect [defense counsel] to discuss that burden of proof with you and urge you to find that we have not met our burden, okay? That is our burden of proof, beyond a reasonable doubt, and I haven't talked about it much. Here's the thing, okay, in a case like this where it's a crime against a person, and you have testimony from her and you have testimony from him, some of these issues get a little bit narrower, right? If you believe her, he's guilty, basically, of everything. If you believe him, he's guilty of nothing, right? And so I'm not going to spend a lot of time talking about the burden of proof in this case. But I do just want to reiterate the evidence in this case is not good for [defendant]. [E.] is corroborated and supported in major, major ways. And if you take one day or six days to consider every piece of evidence and look at these exhibits, you will come to the conclusion that he is guilty beyond a reasonable doubt."

Defendant's claim of prosecutorial misconduct is forfeited because his trial counsel did not object to the challenged argument or request a curative admonition. (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1328.) Anticipating this conclusion, defendant argues he received ineffective assistance of counsel.

In order to prevail on his ineffective assistance claim, defendant "must demonstrate both deficient performance under an objective standard of professional reasonableness and prejudice under a similarly objective standard of reasonable probability of an adverse effect on the outcome." (*People v. Waidla* (2000) 22 Cal.4th 690, 718; see *People v. Lopez* (2008) 42 Cal.4th 960, 966.)

Although it is improper for a prosecuting attorney to misstate the burden of proof in a criminal trial (*People v. Hill* (1998) 17 Cal.4th 800, 830-831), "defendant must show that, '[i]n the context of the whole argument and the instructions' [citation], there was 'a reasonable likelihood the jury understood or applied the complained-of comments in

6

an improper or erroneous manner.  [Citations.]  In conducting this inquiry, we "do not lightly infer" that the jury drew the most damaging rather than the least damaging meaning from the prosecutor's statements.  [Citation.]' [Citation.]" (*People v. Centeno* (2014) 60 Cal.4th 659, 667.)

Defendant focuses on the following comments:  "If you believe her, he's guilty, basically, of everything.  If you believe him, he's guilty of nothing, right?"  Defendant argues those comments misstated the burden of proof because the defense does not have to convince the jurors of anything, and believing defendant's testimony was not the only way for the jury to find him not guilty.  Rather, the jury could find him not guilty if it could not decide which version of events to believe or if it did not have an abiding conviction as to the truth of the charges.

Considering the totality of the circumstances, however, defendant's trial counsel was not deficient because the challenged comments would not have reasonably suggested to the jury that believing defendant was the only route to reasonable doubt.  The prosecutor expressly directed the jury's attention to the reasonable doubt instruction.  That instruction accurately described the burden of proof.  Defendant does not argue otherwise.  The prosecutor encouraged the jury to consider all the evidence and conclude that defendant is guilty "beyond a reasonable doubt," again drawing the jurors' attention to the reasonable doubt standard as the appropriate burden of proof.

Because no reasonable juror would have misunderstood the prosecutor's argument to misstate the burden of proof, defense counsel's failure to object did not fall below an objective standard of reasonableness.  (*People v. King* (2010) 183 Cal.App.4th 1281, 1307.)

## II

Defendant next claims the trial court should not have instructed the jury that an uncharged sexual offense could be considered for propensity if the prosecution proved the offense by a preponderance of evidence.

7

A

During trial, E. described an incident at the Vacaville apartment when she was 13 years old when defendant directed her to use a strap-on dildo to penetrate his anus. Defendant told E. it was something her mother used to do. The incident was not charged as an offense, but E.'s testimony regarding the incident was admitted as propensity evidence under Evidence Code section 1108, and the jury was instructed with CALCRIM No. 1191A as follows:

"The People presented evidence that the Defendant committed the crime of . . . sexual penetration of the Defendant with a strap-on dildo by [E.] That was not charged in this case. This crime is defined for you in this instruction.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the Defendant, in fact, committed the uncharged offense.

"Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. If the People have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the Defendant committed the uncharged offense, you may but are not required to conclude from that evidence that the Defendant was disposed or inclined to commit sexual offenses, and based on that decision also conclude that the Defendant was likely to commit and did commit the crimes as charged here.

"If you conclude that the Defendant committed the uncharged offense, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the Defendant is guilty of any of the charged crimes. The People must still prove the charges and allegations beyond a reasonable doubt."

The instruction then defined the uncharged crime and reiterated that "the People must prove [the elements] by a preponderance of the evidence."

8

B

Defendant acknowledges that CALCRIM No. 1191A normally provides an accurate statement of the law regarding the jury's ability to consider an uncharged sexual offense as propensity evidence under Evidence Code section 1108 so long as the People have proven by a preponderance of the evidence that defendant in fact committed the uncharged offense. Indeed, in *People v. Reliford* (2003) 29 Cal.4th 1007, 1009, the California Supreme Court approved that instruction's predecessor, CALJIC No. 2.50.01, which is "similar in all material respects to CALCRIM No. 1191A." (*People v. Panighetti* (2023) 95 Cal.App.5th 978, 997 (*Panighetti*).) As this court has explained: "Focusing on the plain language of the instruction, the court in *Reliford* concluded: 'We do not find it reasonably likely a jury could interpret the instructions to authorize conviction of the charged offenses based on a lowered standard of proof. Nothing in the instructions authorized the jury to use the preponderance-of-the-evidence standard for anything other than the preliminary determination' whether the defendant committed an uncharged sex crime. [Citations.] We are in no position to reconsider the Supreme Court's holding in *Reliford*." (*Panighetti,* at p. 998.)

Nevertheless, defendant argues uncharged sexual offenses admitted for propensity purposes should be proven under a higher standard when the uncharged sexual offense is described only by the victim. Defendant claims it would require mental gymnastics for the jury to apply a lesser standard of proof to one aspect of E.'s testimony but another standard in determining defendant's ultimate guilt.

This court rejected such an argument in *Panighetti*. "There is nothing in *Reliford* that suggests the analysis is limited to instructions regarding uncharged crimes committed against persons other than the victim. Rather, the focus in *Reliford* was whether use of a different standard of proof for uncharged offenses negatively interfered with the People's ultimate burden of proof for the charged offenses. The existence of that problem is dependent on the instructions themselves, not the source of the evidence." (*Panighetti,*

9

*supra*, 95 Cal.App.5th at p. 998; see also *People v. Gonzales* (2017) 16 Cal.App.5th 494, 501-503 (*Gonzales*) [there is nothing irrational about a victim supporting her testimony with testimony of uncharged sexual offenses and the instruction was not likely to result in misapplication of the burden of proof].)

We reach the same conclusion in this case.**2** Defendant's instructional error contention lacks merit.

III

Defendant further claims the trial court erred in instructing the jury inconsistently on the crimes that were alleged to have been accomplished by duress. Although defendant did not object to the challenged instructions at trial, we exercise our discretion to address the merits of his contention.

As relevant to this contention, the People charged defendant with four counts of violating section 269, subdivision (a)(1) [rape accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate injury] (counts 1, 4, 7, & 10), four counts of violating section 289, subdivision (a)(1) [sexual penetration accomplished against a person's will by means of force, violence, duress, menace, or fear of immediate injury] (counts 2, 5, 8, & 11), and nine counts of violating section 261, subdivision (a)(2) [aggravated sexual assault accomplished by rape within the meaning of

---

**2** Defendant urges this court to adopt the view expressed by Justice Perren in a separate opinion concurring in the result in *Gonzales, supra*, 16 Cal.App.5th 494. Justice Perren urged that where evidence of an uncharged offense consists solely of the victim's testimony, the jury should not be instructed with CALCRIM No. 1191A but should instead be given an instruction resembling CALCRIM No. 1191B on the proper use of *charged* offenses as propensity evidence. Justice Perren reasoned that the situation of a victim providing testimony regarding an uncharged offense is similar to the situation in which the propensity evidence consists solely of charged offenses. (*Id*. at p. 507 (conc. opn. of Perren, J.).) In *Panighetti*, however, this court declined to adopt such an approach (*Panighetti, supra*, 95 Cal.App.5th at p. 998, fn. 8), and we decline to adopt it here.

10

section 269, subdivision (a)(1) of a child under the age of 14 and seven or more years younger than the defendant] (counts 13, 15, 17, 19, 21, 23, 25, 27, & 29). The first eight counts were based on conduct occurring at the Vacaville apartment when E. was 13 years old; the latter nine counts of forcible rape were based on conduct occurring at Dana's property when E. was 14 and 15 years old. In closing arguments, the prosecutor and defense counsel discussed the concept of duress.

The crimes relevant to this appellate contention required proof that defendant accomplished the charged acts against the victim's will. (§ 261, subd. (a)(2); §289, subd. (a)(1); § 269, subd. (a)(1).) For the rape by means of duress counts, the trial court instructed the jury that one of the elements of the crime was that the minor did not consent to the intercourse, and that "consent" in that context meant "positive cooperation" pursuant to "free will." The instruction added: "It is not a defense that the minor may have consented to the act." The instruction for the sexual penetration by means of duress counts was similar, directing the jury that one of the elements of the crime was that the minor did not consent to sexual penetration, and that consent in that context meant positive cooperation pursuant to free will. Again, the instruction added: "It is not a defense that the minor may have consented to the act." Finally, the instruction for the aggravated sexual assault counts directed the jury that as an element of the crime, the People had to prove that defendant committed rape by means of force, violence, duress, menace, or fear of immediate injury. The instruction referred the jury to the separate instruction for rape by means of force, violence, duress, menace, or fear of immediate injury.

Assuming instructional errors without deciding the question, we conclude the assumed errors were manifestly harmless.

Instructional error that withdraws from the jury an element of the crime is prejudicial unless "it is clear beyond a reasonable doubt that a rational jury would have rendered the same verdict absent the error. [Citation.]" (*People v. Merritt* (2017)

11

2 Cal.5th 819, 831.) To make this determination, we examine the entire cause, including the evidence and the procedural circumstances. (*People v. Aledamat* (2019) 8 Cal.5th 1, 3.) Among other things, we may consider whether the attorneys provided information about the required element, whether the defendant conceded or admitted the element, whether the jury's other factual determinations necessarily decided the required element, and whether there is overwhelming evidence of the element. (*Merritt,* at pp. 831-832.)

The crimes relevant to this contention required, among other things, that the unlawful acts be committed against the victim's will and that defendant accomplished the crimes by means of force, violence, duress, menace, or fear of immediate injury. The prosecution's main theory with respect to the latter element was that defendant used duress. Section 261, subdivision (b)(1) provides that duress "means a direct or implied threat of force, violence, danger, or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to perform an act which otherwise would not have been performed, or acquiesce in an act to which one otherwise would not have submitted. The total circumstances, including the age of the victim, and the victim's relationship to the defendant, are factors to consider in appraising the existence of duress." There is no assertion that the jury was improperly instructed with respect to this concept. Thus, the jury necessarily, and quite reasonably, concluded that defendant directly or impliedly threatened E. in a manner that would have coerced a reasonable person into acquiescing in conduct to which she otherwise would not have submitted. That finding alone does not mean the jury necessarily found the act was done against her will. (See *People v. Soto* (2011) 51 Cal.4th 229, 246, 245 ["duress is measured by a purely objective standard" and focuses on the defendant's conduct, not the victim's state of mind].) However, we conclude it is relevant to the harmless error analysis. The jury obviously believed E.'s testimony, and that testimony overwhelmingly established that duress was used and that the sexual acts were committed against her will. Based on our review of the record, we

12

conclude it is clear beyond a reasonable doubt that any rational jury would have rendered the same verdicts absent the assumed instructional errors.

Defendant took advantage of E's sadness following her mother's death, telling her she "wouldn't feel so empty" if she had sex. When defendant placed a vibrator against E's vagina, E. told defendant she "didn't want to do this." When defendant inserted his penis into her vagina, E. kept saying, "This is wrong, this is wrong, this should not be happening." E. testified: "I didn't really have a choice. I already lost my mom. I told him no. I was afraid he would leave too." She added: "I was always a small kid, and he was larger in size, and he was strong." During an uncharged assault, E. told defendant she did not want to be doing anything sexual with him. E. would orally copulate defendant so she could leave. She did not want to engage in any of the sexual activity but acquiesced in the hope that defendant would stop being violent and would stop yelling, and so she would not have to worry about her sisters. She was tired of the emotional and physical abuse. Defendant yelled at her and on one occasion chased her out of the trailer with a machete. On another occasion defendant grabbed E. by the hair, pulled her to the ground, dragged her, and slapped her across the side of her head. E. said she was afraid of defendant, adding: "He threatened to take my sisters away or kill me if I told on him because he didn't want to go back to prison." E.'s boyfriend testified that E. was terrified of defendant.

Both the prosecutor and defendant's trial counsel discussed duress. The defense's primary strategy was to deny that any sexual activity occurred and to argue that E. and Dana were not believable witnesses. But the jury believed E.'s testimony and discredited that of defendant. The evidence is overwhelming that defendant's conduct not only would have coerced a reasonable person to perform acts she otherwise would not have performed, but that it actually coerced E. to perform those acts against her will.

The assumed instructional errors were harmless beyond a reasonable doubt.

IV

In addition, defendant argues cumulative prejudice requires reversal. Having found that even the assumed instructional errors were harmless, there is no prejudice to cumulate.

DISPOSITION

The judgment is affirmed.

/S/
MAURO, Acting P. J.

We concur:

/S/
DUARTE, J.

/S/
FEINBERG, J.